(March 21, 1978)

■ ZAYRA CHERNEY, Respondent, v BLAISE DE ROSA et al., Appellants.—
Order, Supreme Court, Bronx County, entered June 27, 1977, granting
plaintiff's motion to reargue an order entered April 12, 1977, and which
upon reargument permitted judgment on default to be entered against the
defendants in the amount of $150,000, and which granted defendants' cross
motion for reargument and upon reargument denied their motion to dismiss
the complaint, affirmed, without costs or disbursements, and the appeal
from order, Supreme Court, Bronx County, entered April 12, 1977, which
granted the defendant's motion to dismiss the complaint against defendant
LBR General Contracting Co., but which determined that the evidence
presented at the traverse hearing was sufficient to establish proper substi-
tuted service upon defendant De Rosa, unanimously dismissed, as academic,
without costs or disbursements. In this negligence action, the process server,
on three separate days at different times, but always during working hours,
attempted to serve the individual defendant De Rosa at his business address,
but no one answered the door. Thus, substituted service, pursuant to CPLR
308 (subd 4), was permissible. The case of *Weinberg v Hillbrae Bldrs.* (58
AD2d 546) is distinguishable in that the process server there had spoken to
the defendant's wife at defendant's residence before making substituted
service. Thus, service upon a person of suitable age and discretion could
have been effected. (CPLR 308, subd 2.) Here, after three abortive efforts,
the process server could find no one to fit the statutory definition. The fact
that he later served the corporate codefendant (De Rosa's alter ego) at the
same address does not detract from his earlier reasonable diligence in
attempting personal service upon the individual defendant. Clearly, jurisdic-
tion was obtained over both defendants. De Rosa attempts to excuse his
default by claiming that he sent whatever process was received by him to
his insurance companies, Allstate and the Travelers. Yet, in his affidavit in
support of the motion to dismiss the complaint, De Rosa states that at the
time he learned of the accident which is the subject of this lawsuit, and
before the commencement thereof, he was informed by Allstate that it had
disclaimed coverage because the policy had lapsed prior to the accident. De
Rosa also states that his Travelers' policy, which succeeded the Allstate
policy, covered another one of his companies, Jami Contracting Co., Inc.,
which is not a defendant herein. De Rosa's failure to respond in any fashion
for 18 months cannot be excused by his reliance on insurance companies
which had either disclaimed liability or insured another corporation. Even
after a lapse of 18 months, De Rosa's only response was to have a lawyer file
a notice of appearance. By that time a default had been taken and notice of
entry served upon the defendants. No further action whatsoever was taken
by this lawyer. Subsequently, almost six months later, after receiving a note
of issue for an inquest, De Rosa made his first belated move, a motion to
dismiss, just as the inquest was about to be completed. Finally, any pretense
of good faith by De Rosa dissipates in the light of his refusal to accept mail
from plaintiff's attorney. If he were acting in good faith on the mistaken
notion he had insurance coverage, the normal reaction would have been to
turn these letters over to either or both of the insurance companies which
he believed covered him. At the least, he should have sought legal counsel
or contacted plaintiff's attorneys as to his dilemma. Instead, he simply
refused to accept any mail concerning the litigation. Although public policy
usually dictates that actions be heard on the merits and not be decided on
default, De Rosa's conduct in refusing to participate in this action for a

period of two years, during which every statutory notice requirement had been religiously adhered to, and in refusing to accept mail from plaintiff's attorney at an address which he used both as a residence and for business, removes him from the protection of this policy. De Rosa's default was inexcusable. As for De Rosa's claim of meritorious defense, it is conceded that he constructed the platform which collapsed. He now contends that the collapse of the platform was caused by overloading by guests of the owner, of whom the plaintiff was one. Quite obviously, defendant has no personal knowledge as to how the accident happened. But, in any event, this hypothesis as to the cause of the accident, facilely advanced, does not constitute the full and complete disclosure of a meritorious defense sufficient to sustain the vacatur of a default. (See *Abrams v Abrams,* 56 AD2d 775.) Concur—Lupiano, Lane, Markewich and Sullivan, JJ.; Murphy, P. J., dissents in part in the following memorandum: I agree with the majority that jurisdiction was obtained over both defendants. However, I believe that their default should be vacated and that they should be permitted to answer. Generally, a disposition of controversies on the merits is favored and, in furtherance of that policy, a default will be vacated upon a proper showing of a meritorious defense, an excusable default, and the absence of willfulness. *(Corley v East Aurora Metals,* 55 AD2d 840). Defendant De Rosa, individually and as an officer in defendant LBR., submitted an affidavit in support of the application to vacate the default. At the request of a land owner named Martin Joseph, the defendants built a wooden platform, four by six feet, that was placed on a bulkhead pier. The defendants were not in any way involved in the construction of the pier. They state that the platform collapsed and plaintiff was injured when it was overloaded with guests at a "boat ride" party given by Martin Joseph. The plaintiff has not submitted an affidavit of merits challenging defendant De Rosa's version of the circumstances leading to her injury. It was also conceded on oral argument that the land owner, Martin Joseph, has already settled with the plaintiff for a sum of $96,000. In this background, the defendants have demonstrated that they may well have a meritorious defense based upon the fact that the collapse was caused by a negligent overloading of the platform rather than any defect in the construction. Moreover, since the defendants were not present at the time of the collapse, they should be permitted to explore at disclosure and at trial those matters surrounding the collapse that are within the exclusive knowledge of the plaintiff and the land owner. The defendants were served with process in the fall of 1974 and they did not move to vacate their default until the fall of 1976. During this two-year period, Allstate's agent disclaimed liability on the policy covering defendant LBR on the ground it had expired before the occurrence of July, 1973. Defendant De Rosa also had a policy with Travelers covering his other corporation, Jami Contracting Co., Inc. While it is not totally clear from this record, it would seem that an attorney, representing Travelers, appeared briefly on the defendants' behalf in the spring of 1976. De Rosa claims that he mailed the papers, as he received them, to both Allstate and Travelers. He felt that he was covered by one insurance policy or the other. A reasonable argument can be made that the default should not be opened because defendants were lax in accepting and forwarding all papers to their insurers. Likewise, a plausible argument can be made that, in light of the insurers' disclaimers, the defendant should have hired independent counsel at an early stage in these proceedings. It is true that defendants' inaction was imprudent by lawyers' standards. Nonetheless, there is no evidence in the record to disprove De Rosa's contentions that he, a local laborer-contractor, proceeded under the

good faith assumption that defendants were covered by one of the policies. As evidence of De Rosa's honest belief in that regard, a declaratory judgment action is pending to resolve the coverage issue. Hence, defendants' default can not be considered willful. Moreover, there is no indication that the plaintiff has been prejudiced in any way by the default. Under these circumstances, the interests of justice demand that the order directing the entry of a default judgment of $150,000 be vacated and that this case be resolved on the merits. A contrary determination results in the virtual financial destruction of the individual defendant and his business for an injury that he may not have caused. In opening the default, I would impose appropriate costs for the delay and inconvenience caused by the default. Accordingly, the order should be modified, by reversing so much thereof as denied defendants' request to vacate their default by granting that relief, with appropriate costs, and, as modified, it should be affirmed.