JOSEPH O'HEANEY, Respondent, v GRATIA O'HEANEY, Appellant.

Fourth Department, April 3, 1981

APPEARANCES OF COUNSEL

*Dutcher & Sidoti (Henry R. Dutcher* and *Erwin N. Witt* of counsel), for appellant.

*Robinson, Williams, Angeloff & Frank (Mitchell T. Williams* and *Martha W. Arthur* of counsel), for respondent.

OPINION OF THE COURT

DILLON, P. J.

This appeal comes to us in a unique posture and presents the question of whether in a matrimonial action a showing that service of process under CPLR 308 (subds 1, 2) can-

not be made with due diligence is a precondition to an order for substituted service pursuant to subdivision a of section 232 of the Domestic Relations Law and CPLR 308 (subd 4). We hold that it is, and that substituted service pursuant to an order issued upon less than competent proof that the condition has been satisfied will not confer jurisdiction over the person of the defendant.

This long-term marriage produced three children. Aged 21, 19 and 17, they continued to reside with defendant when the parties commenced living apart in November, 1979. On July 18, 1980 plaintiff, solely upon the affidavit of a member of the law firm representing him, applied ex parte for an order of substituted service pursuant to subdivision a of section 232 of the Domestic Relations Law and CPLR 308 (subd 4). Special Term's order permitting "nail and mail" service also included a direction that defendant show cause "why an order should not be made stating that service of a Summons and Complaint upon [defendant] on July 18, 1980, by means of affixing and mailing and subsequent filing within twenty (20) days shall not be deemed sufficient service and shall not be deemed to have commenced an action for a divorce as of July 18, 1980".

It is not disputed on appeal that the acts of "nailing and mailing" were accomplished on July 18, 1980. Subsequent thereto, on the return of the order to show cause before another Justice, plaintiff submitted for the first time a process server's affidavit which that court found contained averments "more than adequate to meet the requirement of deligent attempts at service".[1] On that finding it was concluded that personal service of the defendant had been effected on July 18, 1980. Defendant appeals from the order thus validating service of process.[2]

---

1. While we do not agree that the affidavit demonstrates "due diligence", it is unnecessary in our view of the matter to address the issue.

2. Underlying the controversy between the parties is the effect upon their respective rights of the "Equitable Distribution Law" (L 1980, ch 281, Domestic Relations Law, § 236) which was signed by the Governor on June 19, 1980 and became effective on July 19, 1980. Part B of section 236, as amended, provides for the equitable distribution of "marital property" as that term is statutorily defined (Domestic Relations Law, § 236, part B, subd 1, par c), and is intended to achieve "sexual equality" in the consequences of matrimonial actions *(Gellman v Gellman,* 80 AD2d 735). Part B is to be applied, however,
*(n. contd.)*

Mindful in assessing the jurisdictional issue that a statute which permits service of process other than by personal service must be strictly construed and faithfully followed *(Erickson v Macy,* 231 NY 86, 90-91; *Korn v Lipman,* 201 NY 404, 406; *Air Conditioning Training Corp. v Pirrote,* 270 App Div 391, 393), we need examine only briefly the relevant statutory authority for substituted service in a divorce action. Where, in the exercise of due diligence, service of a summons cannot be made upon a defendant in accordance with CPLR 308 (subds 1, 2), "nail and mail" service may be made pursuant to subdivision 4 thereof without court order in all except matrimonial actions. In the latter, a prior court order for "nail and mail" service is required pursuant to subdivision a of section 232 of the Domestic Relations Law which authorizes substituted service "in accordance with the provisions of" CPLR 308.

Construed together, the statutes make clear that the proof required to withstand a postservice attack upon the necessity for, and thus the validity of, "nail and mail" service in the ordinary case (see *Barnes v City of New York,* 51 NY2d 906, affg 70 AD2d 580) is the same as that which must be demonstrated to the court *before* an order therefor may be entered in a matrimonial action. It follows, then, that the court's discretion to authorize "nail and mail" service in an action for divorce may only be exercised upon a prior showing that delivery of the summons pursuant to CPLR 308 (subds 1, 2) "cannot be made with due diligence" (CPLR 308, subd 4). To hold otherwise would be to equate without real distinction and in contravention of clear legislative expression the procedure to be followed in matrimonial actions with that which is permitted in other actions.

The conclusion thus reached is not without precedent. Prior to 1974, substituted service of process pursuant to CPLR 308 (subds 2, 3 or 4) was not permitted in matrimonial actions. Expedient service pursuant to subdivision 5 of that section, in lieu of the traditional method of publication, was and remains permissible (see *Deason v Deason,* 73 Misc 2d 964, decided in response to language in *Deason*

---

only to actions commenced on or after July 19, 1980. Part A is controlling with respect to any action commenced before that date.

*v Deason*, 32 NY2d 93, 95). It was well established that whether sought in a matrimonial action under CPLR 308 (subd 5) (including use thereunder of the "nail and mail" method) or under former sections 230 and 231 of the Civil Practice Act (pursuant to which a court order for substituted service was required), substituted service could not be approved except upon a proper showing of necessity, including where appropriate, a demonstration that bona fide attempts to serve the defendant personally had failed *(Arroyo v Arroyo*, 76 Misc 2d 652; *Deason v Deason*, 73 Misc 2d 964, *supra; Blatz v Benschine*, 53 Misc 2d 352; see Civ Prac Act, former § 230; cf. *Haswell v Lincks*, 87 NY 637; *McCarthy v McCarthy*, 16 Hun 546, affd 84 NY 671).

Here plaintiff's application for an order permitting "nail and mail" service was based solely upon the affidavit of one of his attorneys. Its essential allegations were insufficient to demonstrate either that personal delivery of the summons could not be made or that "due diligence" had been exercised in an effort to effect such delivery. The affidavit was based not upon personal knowledge of the affiant but merely upon information and belief. As such, its averments that a summons and complaint had been delivered to a process server "during the week of July 14, 1980" and that the process server had unsuccessfully "made several attempts" to effect personal service upon defendant, and that defendant had "secreted her whereabouts * * * in order to * * * intentionally and wilfully avoid service", were of no evidentiary value and failed to satisfy the statutory precondition.

Nor could the defective order be cured by proof on return of the order to show cause subsequent to "nailing and mailing". Unlike the practice in nonmatrimonial cases where evidence supporting the need for substituted service is submitted postservice, and where a matter may somtimes be remitted for further proceedings on that issue (see, e.g., *Gilbert v Lehman*, 73 AD2d 793), the determination that the statutory standard has been satisfied must be made in a matrimonial action before the order for such service is issued.

The order permitting substituted service having been granted in derogation of both statute and precedent, jurisdiction over the person of the defendant has not been achieved.

Thus viewed, there is no need to address the other issues raised on appeal. Accordingly, the order appealed from should be reversed and the order authorizing substituted service should be vacated and the application therefor denied.

HANCOCK, JR., J. (dissenting). I would affirm. Defendant admits that she deliberately stayed away from her home for the purpose of evading service of process from July 7, 1980 until after July 19, 1980, the effective date of the Equitable Distribution Law (Domestic Relations Law, § 236). In her sworn affidavit she states that she "had learned from friends that her husband was going to serve her with a summons and complaint to get his case in under the old matrimonial law". There is undisputed evidence that, to avoid detection, she left her car at home, rented an automobile and went to Niagara Falls where she "changed motels twice." She called her children but did not inform them of her whereabouts. Under these circumstances, having made resort to substituted service pursuant to CPLR 308 (subd 4) necessary by making personal service impossible, she may not now be heard to attack the order for the insufficiency of the showing that she could not be found for personal service (see *Gilbert v Lehman*, 73 AD2d 793; *Greenwood v White*, 25 AD2d 73; *Kenworthy v Van Zandt*, 71 Misc 2d 950; *Cohen v Arista Truck Renting Corp.*, 70 Misc 2d 729, cited with approval in *Feinstein v Bergner*, 48 NY2d 234, 241; *Schenkman v Schenkman*, 206 Misc 660, affd 284 App Div 1068; *Levine v National Transp. Co.*, 204 Misc 202, affd 282 App Div 720).

The duty to submit to service of process, while not legally enforceable, is "none the less an obligation which ought not to be evaded by a defendant whom it is attempted to serve" *(Gumperz v Hofmann*, 245 App Div 622, 624, affd 271 NY 544). Thus, where "a person deliberately rejects service and turns away therefrom after being made aware

of the attempt to effect such service upon him, there can be no doubt about its validity when the summons is left with him *(Levine v. National Transp. Co.,* 204 Misc. 202, affd. 282 App. Div. 720)" *(Schenkman v Schenkman,* 206 Misc 660, 662, affd 284 App Div 1068, *supra).* That plaintiff was concededly attempting to effect service before the change in the statute does not relieve defendant from the operation of estoppel. Plaintiff's lawful efforts to exercise his rights cannot excuse defendant's unlawful actions in thwarting those efforts.

In view of defendant's conceded absence Special Term properly held that the four attempts at service made on three different days met the requirements of the statute (see, e.g., *Cherney v De Rosa,* 61 AD2d 931, app dsmd 45 NY2d 733; compare *Competello v Giordano,* 71 AD2d 871, and *Barnes v City of New York,* 70 AD2d 580, affd 51 NY2d 906, where there was proof that the process servers could have effected service if they had attempted it at any time other than while defendants were at work).

I find nothing to suggest that on a postservice motion challenging an order for substituted service in a matrimonial action, the court may not consider proof supplementing the evidence on which the original order was granted. Such postservice evidence has been permitted to validate *nunc pro tunc* a plaintiff's efforts to accomplish service pursuant to CPLR 308 (subd 5, formerly subd 4) (see McLaughlin, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR, C308:5, pp 215, 216, discussing *Totero v World Tel. Corp.,* 41 Misc 2d 594, in which the court by ex parte order validated pursuant to subdivision 4, now subdivision 5, service which had already been made on defendant's agent; *Todd v Todd,* 51 Misc 2d 94, in which Justice MEYER [now Court of Appeals Judge MEYER], although he denied an ex parte motion for a *nunc pro tunc* order validating under subdivision 4, now subdivision 5, plaintiff's attempted "nail and mail" service at an address at which defendant did not reside, indicated that in a proper case such an order could be granted; cf. *Sellars v Raye,* companion case to *Dobkin v Chapman,* 21 NY2d 490, 495-496).

In *Deason v Deason* (73 Misc 2d 964), in response to the invitation of the Court of Appeals *(Deason v Deason,* 32 NY2d 93, 95) the court held that section 232 of the Domestic Relations Law and CPLR 308 (subd 5) should be construed as permitting the use in matrimonial actions of court-ordered alternative methods of service, including as one such method "nail and mail", although that method was then specifically prohibited under CPLR 308 (subd 4) in matrimonial actions. There is nothing in section 232 of the Domestic Relations Law or CPLR 308 or in the cases construing those statutes to suggest that subdivision 5 was intended to be applied any differently or any more stringently in matrimonial actions than in other cases. Nor is there any reason to think that postservice proof, acceptable in other actions under subdivision 5, was not acceptable in matrimonial actions. (As pointed out in *Deason v Deason, supra,* pp 967-968, section 232 of the Domestic Relations Law does not impose any additional requirements concerning the method of service in matrimonial actions; it merely prescribes the form of notice to be incorporated into the summons.)

Further, there is no indication that when the Legislature amended CPLR 308 (L 1974, ch 765) to permit court-ordered "nail and mail" service under subdivision 4 in matrimonial actions and to remove the existing anomaly in the statute which prohibited a procedure in subdivision 4 which was permitted under subdivision 5 (see interpretation of CPLR 308, subd 5, in *Deason v Deason, supra)* it intended that the requirements for court-ordered service should be any different or stricter than those then imposed under subdivision 5. We must assume that had the Legislature, which is presumed to have known of the existing judicial construction of subdivision 5 (McKinney's Cons Laws of NY, Book 1, Statutes, § 191), intended to require a different procedure under subdivision 4, it would have so provided. Nor do I see any reason to impose stricter procedural requirements under subdivision 4 than under subdivision 5. If anything, there is more reason to require a prior final determination under subdivision 5, which, unlike subdivision 4, does not prescribe a specific method of service but permits the court to fashion one appropriate to the circumstances.

Under both subdivisions, a defendant in a matrimonial action is given the protection of mandated judicial supervision of the service of process, a procedure not required under CPLR 308 (subd 4) in nonmatrimonial cases. It is in the existence of this requirement of final judicial approval for service in all matrimonial cases, not in whether approval is obtained before or after service, that the legislative concern for defendants in matrimonial actions is expressed.

Under the Civil Practice Act (§§ 230, 231), when a court order was required for substituted service in all cases, courts permitted defective affidavits of service to be later corrected *(Lehman v Mariano*, 285 App Div 824; *Air Conditioning Training Corp. v Pirrote*, 270 App Div 391) and deficiencies in the process server's affidavit as to the efforts made to gain admittance to defendant's residence to be supplied by postservice supplemental proof *(Merchandise Nat. Bank of Chicago v Lister*, 7 Misc 2d 106; cf. *Haswell v Lincks*, 87 NY 637). There is no reason to apply a different rule here.

In view of the conceded fact that defendant was not available for personal service, it cannot be questioned that the requirement of the statute (i.e., that personal service could not be made with due diligence) was in fact met. As stated by the First Department in *Air Conditioning Training Corp. v Pirrote (supra*, p 393): "There is * * * a difference between service and proof of service. One is a fact of which the other is the evidence. It is the fact of proper service which confers jurisdiction * * * The deficiency in the proof may be supplied." (See *Merchandise Nat. Bank of Chicago v Lister, supra*, p 107, in which the court gave plaintiff an opportunity to supply additional proof of proper service where the process server, although he failed to allege in his affidavit compliance with section 231 of the Civil Practice Act, actually made a reasonable attempt to gain entry to defendant's home.) Because service was made in compliance with the order on July 18, 1980 and necessity for the order unquestionably existed at that time, jurisdiction was obtained. The deficiency in the application for the original order was not a jurisdictional defect and was cured by subsequent proof.

SIMONS, DOERR and MOULE, JJ., concur with DILLON, P. J.; HANCOCK, JR., J., dissents and votes to affirm in a separate opinion.

Order reversed, with costs, order of substituted service vacated and application therefor denied.