Sheldon S. Levy, J.
The basic question upon’ this application is whether the rendition of normal medical services by a licensed physician constitutes a consumer credit transaction.
The action is for. a balance due for medical services rendered to one Harry Drucker, now deceased, by plaintiff doctor. The motion is by defendant wife administratrix of the estate of Harry Drucker and ,by said defendant individually to dismiss the action,. pursuant to CPLR .3211 and subdivision (d) of section 401 of the CCA, for failure to serve a proper summons which is printed legibly in both English and Spanish.
Defendants’ claim is that the litigation emanates from a “ consumer credit transaction,” and that the requirement for a bilingual .summons in such an action is clear (CCA, § 401, subd. [d]).
In opposition, plaintiff does not dispute that a bilingual summons was not served. Contrariwise, plaintiff asserts that no credit of any kind was ever afforded to defendant’s deceased.; that subject medical services were rendered on a cash basis only; that it was anticipated that full payment of the bill would be *217 made upon the completion of services; and that the medical services were normally rendered and not in connection with any consumer credit transaction.
The deceased patient’s wife, Lillian Drucker, is acting as the administratrix for her husband’s estate and is also named as a defendant individually herein. In the first cause of action of the indorsed complaint, she, along with her deceased husband is charged with specifically requesting the medical services from plaintiff, between January 30, 1973 and September 16, 1973 and promising to pay for same.
Nevertheless, Mrs. Drucker does not reply to plaintiff’s asser-, tion that these services were performed for her husband with the physician’s usual demand — whether specifically orally annunciated or merely implied — for “ cash on the barrelhead.” The court must assume then that this was so and that no special credit arrangements — beyond the standard sufferance of “ time to pay ” — was afforded .by plaintiff to defendants.
Be that as it may, the question still remains as to whether the performance of the usual medical (or, for that matter, dental, chiropractic, ehiropedistic, psychiatric, etc.) services can be considered consumer credit transactions per se.
Subdivision (d) of section 401 of the CCA became effective on September 1, 1970 (L. 1970, ch. 302, § 1). It mandated that, in an action .stemming from a “ consumer credit transaction,” the summons served must be printed legibly in both the Spanish and English language. Its purpose was to ‘ ‘ afford Spanish-speaking residents of New York City a better opportunity to understand important legal notices in actions arising from consumer credit transactions ” (Memorandum of State Executive Department, 2 McKinney’s 1970 Session Laws of New York, p. 2901). Its purpose was a commendable one, but provides little elucidation to the subject under discussion.
However, along with the enactment of subdivision (d) of section 401 of the CCA for the first time in New York State’s statutory history, a definition of “ consumer credit transaction ” was added to the law books., (L. 1970, ch. 302, § 2, eff. Sept. 1, 1970). Section 2101 of the CCA was amended to include the definition as subdivision (g). It reads: “ (g) ‘ Consumer Credit Transaction ’ means a transaction wherein credit is extended to an individual and the money, property, or service which is the subject of the transaction is primarily for personal, family or household purposes.” The definition was modeled after the definition of ‘ ‘ the adjective ‘ consumer, ’ used with reference to a credit transaction” in the United States Consumer Credit *218 Cost Disclosure Act (known as the “ Federal Truth-in-Lending Act”) (U. S. Code, tit. 15, § 1602, subd. [h]).
At first blush, the definition of consumer credit transaction (CCA, •§ 2101, subd. [g]) (which now has been added verbatim State-wide [CPLR 105, subd. (f)3), as a part of the legislation limiting the places where a creditor can bring suit based on a consumer credit transaction (L. 1973, ch. 238, § 1, eff. Sept. 1, 1973), appears broad enough to encompass the local physician or dentist, etc., who allows a patient time to pay his bill. With maturity, however, first blushes can ripen into “ red faces ” and would, if such a view as defendants propose were adopted by this court.
The plain and simple legislative intent of the bilingual summons requirement was to assure that our Spanish-speaking citizens would fully understand the legal papers which might be served upon them as a result of some purchase on credit into which they had entered and in which they may well have been “ taken.” The unexpressed idea was that, hopefully, they should not be “ taken ’ ’ again by the myriad processes of the law.
The key words in the definition of “ consumer credit transaction” for our purposes are “ a transaction wherein credit is extended to an individual ” (OCA, § 2101, subd. [g]). Obviously, this was not meant to apply to members of the medical profession and related arts, who traditionally do not extend credit as such to patients as a business or medical practice. That a physican might permit payment, or even time payments, after the rendition of his total bill for services performed, for the convenience of his patients, instead of demanding cash payment immediately, cannot serve to transform an original cash basis transaction into one denominated as a “ consumer credit transaction ”.
Only if some special written agreement — unlike the usual medical services transaction — were entered into between physician and patient, wherein credit was specifically extended to the patient by the doctor for a particular reason or purpose, might the transaction ever be considered under the term ‘ ‘ consumer credit.” As stated, however, no such special arrangement appears or is alleged in this action, and the services were apparently completed and billed in the normal fashion for physicians in this community (and, most likely, in every community).
In addition, it should be noted that this entire inquiry revolves around whether medical service performance constitutes a consumer credit transaction. Physicians, dentists and other men of like talents do not render their .services to “ consumers ” *219 or “ purchasers ”, like selling a refrigerator or a vacuum cleaner. Instead, they perform their services for “ patients ”— and this difference alone should remove the product of their labors from the “ consumer transaction ” appellation.
Finally, even a brief look into any dictionary definition of “consumer credit” (which might have sufficed in the first instance) reveals that it is commonly and simply defined as: “ credit extended for buying goods and services for one’s personal use through installment plans, charge accounts, short-term loans, etc.” (Webster’s New World Dictionary of the American Language [2d Coll, ed.], p. 306). The few examples given as a part of the definition aforesaid make clear the holding of this court that the rendition of normal medical services by ,a licensed physician does not constitute a consumer credit transaction.
This being so, and for all of the reasons stated, there was no necessity that the subject summons served in this action be bilingual in printed form or otherwise. The summons being proper, the motion to dismiss the action should be denied, and it is.