OPINION OF THE COURT
John A. Mastrella, J.
This is a motion pursuant to CPLR 5015 (subd [a], par 4) to vacate a default judgment in the amount of $23,424.15, plus interest and costs, entered in Monroe County on May 1, 1979, after a hearing to assess damages for personal injuries allegedly sustained by the plaintiff, Josefina Nuez, on February 8, 1977 when she slipped and fell on the driveway of the premises owned by the defendants at 299 Pullman Avenue, Rochester, New York. Defendants, Julio and Carmen Diaz, are moving to vacate the judgment on the grounds that the court lacked jurisdiction to render the judgment because the summons with notice is jurisdictionally defective on its face and service of process on the defendants was improper.
Defendants’ claim that the summons with notice served *401 in this action is jurisdictionally defective is correct. Both sets of summons with notice served on the defendants on February 18, 1978 and March 25, 1978 only recite that the object of the action is "Negligence” and the relief sought is "Money Damages.”
The CPLR provision then in effect (CPLR 305, subd [b]) provided that "[i]f the complaint is not served with the summons, the summons may contain or have attached thereto a notice stating the object of the action and the relief sought, and, in an action for a sum certain or for a sum which can by computation be made certain, the sum of money for which judgment will be taken in case of default.” It is clear that the failure to set forth a specific amount requested as damages is jurisdictional and precludes the entry of a default judgment: " 'The notice of object of action fails to comply with the requirements of CPLR 305 (subd [b]) as it fails to set forth the relief sought. The notice must contain a statement of the sum for which judgment will be taken in case of default. The conclusion is mandated by CPLR 3215 (subd [b]) which provides in a proceeding before the court to enter a default judgment that "The judgment shall not exceed in amount or differ in type from that demanded in the complaint or stated in the notice served pursuant to subdivision (b) of rule 305.” The requirement is jurisdictional and precluded entry of the default (CPLR 3215, subd [b]; Arden v Loewe’s Hotels, 40 AD2d 894; McDermott v Hoenig, 32 AD2d 838).’ (Eckert Co. v Fuller Co., 51 AD2d 844.)” (Mantell v Servidone Constr. Corp., 61 AD2d 1071; see, also, Schoonmaker v Ford Motor Co., 99 Misc 2d 1095; cf. Long Mfg. NC v Ames Supply Co., 47 AD2d 990.) This rule applies with equal force whether the damages are liquidated or unliquidated, as in the present case, and the amendment to CPLR 305 (subd [b]), effective January 1, 1979 (L 1978, ch 528), is intended to clarify and emphasize this point (Twenty-Third Ann Report of NY Judicial Conference, 1978, pp 274-277). Thus, defendants are entitled to have the default judgment entered against them vacated on this ground.
The parties also claim that service of process on them was improper and not in compliance with the law, which would divest this court of jurisdiction to hear and determine the case until proper service has been effected on the defendants (see Little Shoppe Around the Corner v Carl, 80 Misc 2d 717, 718; *402 cf. Grammenos v Lemos, 457 F2d 1067; Levin v McGovern, 53 AD2d 1042).[1]
Mr. Diaz first claims that he has not lived at the 299 Pullman Avenue address since he and his wife executed a separation agreement in February, 1978. He states that he and his wife tried to keep the separation a secret and did not inform others of their marital problems. He also states that he visits at least once a week to see the children and do chores around the house. Mr. Diaz admits that he has his mail sent to the 299 Pullman Avenue address where he picks it up. In fact, plaintiffs counsel talked with Mr. Diaz on the telephone at this address and sent five separate mailings pertaining to this action to Mr. and Mrs. Diaz at this address, none of which were returned by the United States Postal Service, and two of which were sent by certified mail, return receipt requested, and signed for by Mr. Diaz. Accordingly, Mr. Diaz is estopped from denying that 299 Pullman Avenue is not his "dwelling place or usual place of abode” for purposes of this motion to vacate a default judgment based upon improper service, because he has held himself out as residing at this address; and others, including plaintiff and her counsel, have relied upon his representations (see discussion and cases collected in 21 NY Jur, Estoppel, §§21-26, pp 27-37; cf. Cherney v De Rosa, 61 AD2d 931; Cohen v Levy, 50 AD2d 1039; Kenworthy v Van Zandt, 71 Misc 2d 950).
Defendants next claim that service of process effected on them on February 18 and March 25, 1978 was not in compliance with lawful requirements. They claim service of process was possibly effected on Polly Diaz, the sister of Carmen Diaz, who was living at the Pullman Avenue address until December, 1978, when she returned to Puerto Rico. The defendants also claim that Polly Diaz spoke very poor English and that she never mentioned or turned over to either of the defendants the summons with notice which were allegedly served on her.
Plaintiff’s counsel’s process server, Richard Stadler, however, states that on February 18 and March 25, 1978 he went to 299 Pullman Avenue. He states that on February 18 "an *403 elderly white-skinnned women [sic] between 51 and 65 years of age, standing 5'4" to 5'8", weighing approximately 131 to 160 pounds, and having grey hair appeared at the front door of the residence.” Mr. Stadler asked this woman if she was Carmen Diaz and she replied "Yes.” He also asked her if Julio Diaz was there and she said "No.” Mr. Stadler then handed this woman two copies of the summons with notice, one for each defendant, and subsequently mailed one copy to Mr. Diaz at his address.[2] On March 25, 1978, Mr. Stadler returned to 299 Pullman Avenue and served process on the same woman. He asked if Mr. Diaz was home, to which she replied "No.” Mr. Stadler gave her a copy of the summons and asked her to give it to Mr. Diaz upon his return. He states that she then accepted the summons with notice, muttered several words, and slammed the door closed. Finally, he states that on February 18 he mailed a copy of the summons to Mr. Diaz and prepared and filed an affidavit of service.
CPLR 308 (subd 1) provides that personal service shall be made "by delivering the summons within the state to the person to be served”. Subdivision 2 of the same section also provides that personal service may be made with equal validity as subdivision 1 "by delivering the summons within the state of a person of suitable age and discretion at the * * * usual place of abode of the person to be served and by mailing the summons to the person to be served at his last known residence” (du Pont, Glore Forgan & Co. v Chen, 41 NY2d 794, 797). In addition, service of process must comply with minimal requirements of procedural due process under the United States and New York Constitutions (US Const, 14th Arndt, § 1; NY Const, art I, § 6). As the United States Supreme Court has stated: "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. * * * The notice must be of such nature as reasonably to convey the required information * * * and it must afford a reasonable time for those interested to make their appearance * * *. But if with due regard for the practicalities and peculiarities of *404 the case these conditions are reasonably met, the constitutional requirements are satisfied.” (Mullane v Central Hanover Trust Co., 339 US 306, 314-315 [citations omitted], approved in Memphis Light, Gas & Water Div. v Craft, 436 US 1, 13; Sharrock v Dell Buick-Cadillac, 45 NY2d 152, 163; Dobkin v Chapman, 21 NY2d 490, 501-502; Maloney v Ensign, 43 AD2d 902.) Compliance with procedural due process requires compliance with three component factors involving (1) the content of the notice (see, e.g., Aguchak v Montgomery Ward Co., 520 P2d 1352 [Alaska] [distinguished between content of notice on a summons to individuals living in metropolitan areas and indigent individuals living in rural bush country]), (2) the mode of delivery (Velazquez v Thompson, 451 F2d 202, affg 321 F Supp 34 [constitutionality of substituted service in summary proceedings upheld]), and (3) the characteristics of the recipient (see, e.g., Covey v Town of Somers, 351 US 141 [standards for service of process on an incompetent]; Dale v Hahn, 486 F2d 76 [service on an incompetent]; Matter of Coates, 9 NY2d 242 [service on an incompetent]; Brown v Giesecke, 40 AD2d 1009 [service on an individual of "advanced age and lack of experience and understanding”]). Furthermore, each case must be approached pragmatically, without "a mechanical formula or a rigid set of rules.” (Dobkin v Chapman, 21 NY2d 490, 502, supra; Matter of Zivkovic v Zivkovic, 36 NY2d 216, 221, in which the interests of the opposing parties and the State are properly balanced; see discussion in Daynard, The Use of Social Policy in Judicial Decision-Making, 56 Cornell L Rev 919, 944-946.)
In the present case, by claiming that process was served on an individual who understood little English, defendants are raising questions as to the sufficiency of the content of the notice and the character of the recipient. However, most courts have held that due process does not require bilingual notice where the recipient of such notice is not fluent in English (Kuri v Edelman, 491 F2d 684; Guerrero v Carleson, 9 Cal 3d 808, cert den 414 US 1137 [welfare termination notices]; Commonwealth v Olivo, 369 Mass 62 [city housing department orders to vacate apartments]; Da Lomba v Director of Div. of Employment Security, 369 Mass 92 [notices to request unemployment compensation hearings]; cf. Castro v State of California, 2 Cal 3d 223 [no constitutional bilingual requirements for a voting ballot]; Jara v Municipal Ct. for San Antonio Judicial Dist. of Los Angeles County, 21 Cal 3d 181, *405 cert den 439 US 1067, [no constitutional right to an interpreter at public expense for indigent litigants in civil proceedings];[3] United States v Colon, 415 F Supp 459 [procedure satisfactory requiring prospective jurors to read, write, and understand English]; but cf. Consolidated Edison Co. of N. Y. v Vezcanino, 77 Misc 2d 475 [due process requires bilingual notice of application for replevin order in New York City]; CCA, § 401, subd [d] [bilingual summons arising from consumer credit transaction]; Ratner v Drucker, 79 Misc 2d 216; cf. Judiciary Law, § 387 [court has discretion to appoint an interpreter in all court proceedings]; People v Ramos, 26 NY2d 272 [constitutional right to an interpreter in criminal proceedings]; Matter of Chatoff v Public Serv. Comm. of State of N. Y, 60 AD2d 700 [statutory right to an interpreter for deaf individual in all legal proceedings]; Kropiwka v Department of Ind., Labor & Human Relations, 87 Wis 2d 709 [hearing examiner has discretion to appoint interpreter in discrimination hearing]; 88 CJS, Trial, § 42, pp 101-102; Lau v Nichols, 414 US 563 [English language instruction required for Chinese students under Civil Rights Act of 1964]; Puerto Rican Organization for Political Action v Kusper, 490 F2d 575 [bilingual ballot required under Voting Rights Act of 1965]).
As one court reasoned: " 'English is the language of this country. This conception is fundamental in the administration of all public affairs.’ * * * This is not an officially multilingual country, and notification of official matters in the sole official language of both this nation and this Commonwealth is patently reasonable.” (Commonwealth v Olivo, 369 Mass 62, 72-73, supra [citations omitted].) Furthermore, it is also reasonable that a competent individual who receives a formal or an official-appearing document would be "put on notice that an accurate translation was necessary” (Da Lomba v Director of Div. of Employment Security, 369 Mass 92, 98, supra), especially when one is readily available in our contemporary State. Accordingly, there was no violation of the requirements of procedural due process because process was not bilingual or that the possible recipient of process was not fluent in the English language.
All that is required in New York is that all papers served be in the English language (CPLR 2101, subd [b]; see, *406 also, Hurwitz v Hurwitz, 214 App Div 823). Furthermore, actual notice is not required because a presumption of notice attaches when there has been proper compliance with the statutory requirements (see Dobkin v Chapman, 21 NY2d 490, 502-504, supra; cf. De Forte v Doctors Hosp. of Staten Is., 66 AD2d 792, supra). However, a court may consider fluency in English as one factor in determining whether the individual served was "of suitable age and discretion”, especially when a plaintiff, plaintiff’s counsel, or the process server is on notice that such person is not fluent in English. A court also has broad discretion under CPLR 308 (subd 5) to fashion appropriate methods of service which could include bilingual notice (see, generally, Dobkin v Chapman, supra; cf. CPLR 316, subd [a]; Kernitz v Long Is. City, 50 Hun 428; Donahue v O’Conor, 13 Jones & Sp 278).
In the present case, because the defendants controvert the process server’s statements and claim they did not receive any summons with notice, a hearing is required to determine whether the requirements of CPLR 308 were met and whether this court has valid jurisdiction over the defendant (Hickey v Naruth Realty Corp., 71 AD2d 668; Empire Nat. Bank v Judal Constr. of N. Y., 61 AD2d 789; Weinberg v Hillbrae Bldrs., 58 AD2d 546; Fidelity & Cas. Co. of N. Y. v Yager, 46 AD2d 615; cf. Howard v Spitalnik, 68 AD2d 803; Queensboro Leasing v Resnick, 78 Misc 2d 919). The burden is on the defendants at such hearing to sustain their allegations of lack of notice. If jurisdiction is sustained because service of process was proper, they must then respond. Thus, defendants’ motion to vacate the default judgment entered against them on May 1, 1979 is granted, and the matter is referred for a hearing on the issue of service.

. It should be noted that defendants have not moved to set aside the default judgment pursuant to CPLR 317 on the grounds that they were not personally served with process and have a meritorious defense, because it appears that if such a motion were made on proper papers, they might possibly prevail (see, e.g., Queensboro Leasing v Resnick, 78 Misc 2d 919).

. On March 21, 1978 plaintiff’s counsel sent additional copies of the summons with notice to both defendants at 299 Pullman Avenue, and thus diligently attempted to comply with the statutory mandates for valid service of process (cf. McDonald v Ames Supply Co., 22 NY2d 111, 115; De Forte v Doctors of Staten Is., 66 AD2d 792).

. In New York there is no right by statute or regulation to bilingual welfare applications or termination notices, or an interpreter at a fair hearing (see 18 NYCRR 350.4, 351.23, 355.1, 355.3, 355.4, 358.3, 358.16).