OPINION OF THE COURT
Martin Evans, J.
This superficially routine enforcement motion, submitted virtually on default, requires that the court reassess the requirements for “deliver and mail” substituted service under CPLR 308 (subd 2). It poses significant questions of constitutional dimension: Is a codefendant having an apparent conflict of interest a “person of suitable age and discretion”? Does service upon such an individual satisfy generally accepted standards of due process of law?
Plaintiff City of New York here petitions for an order pursuant to CPLR 5225 (subd [b]) compelling defendant Chemical Bank to pay the city collector the sum of $1,980 plus interest. The payment is sought to satisfy an unpaid adjudication of three years’ tax liability against defendant Milton Glass. Milton Glass maintains a joint account with his wife, defendant Shirley Glass, at a Chemical Bank branch. Milton Glass did not contest the adjudication of *105 liability; a warrant was accordingly filed with the county clerk. Shirley was not a party to the tax proceeding and has no liability on account of it. A process server’s affidavit avers that Milton Glass was served pursuant to CPLR 308 (subd 1) by personal delivery of the moving papers to him at his home. Another affidavit of the same process server asserts that Shirley Glass was served pursuant to CPLR 308 (subd 2) at the same time and place by delivering a copy of the moving papers to “a person of suitable age and discretion to wit: Milton Glass, husband”, and by mailing copies the following day to Shirley Glass at her home address, her last known residence.[1] Neither Milton nor Shirley Glass has answered this petition. Chemical Bank answered only to request that it be discharged upon compliance with the expected turnover order.
At issue is whether Milton Glass, in the context of this case, is a “person of suitable age and discretion”. The phrase is not defined by the statute which employs it. (See CPLR 308, subd 2.)[2] Neither is it clearly defined by the cases, although it is used as a term of art. Some cases wisely recommend taking a practical, commonsense approach, bearing in mind the unique circumstances of each case. (See Karlin v Avis, 326 F Supp 1325.) The multiplicity of fact patterns dealing primarily with the age and mental capacity of the person to whom delivery is made and the nature and closeness of his relationship with the defendant, do not deal with his “discretion” in the context presented here. They thus provide little guidance for the case at bar. The term can only be made meaningful by analyzing the over-all statutory scheme for service of process and its underlying purposes.
Service of process is intended to accomplish two related but distinct purposes. Each is basic to due process.
First, it notifies the defendant that the action is pending, fairly apprises him, in general terms, of its object, and tells *106 him when, where and how he should respond. (See, generally, Valz v Sheepshead Bay Bungalow Corp., 249 NY 122, 133.)
Second, it is “an act of public power” (Matter of Bonesteel, 16 AD2d 324, 326) which symbolizes the court’s assertion of authority over the litigants. It is the modern substitute for the ancient practice of the capias ad respondendum, where the Sheriff, pursuant to a writ prepared at the behest of the plaintiff, would arrest the defendant and hold him to answer the plaintiff’s charges. (See 3 Blackstone’s Comm, p 282.) While this aspect of service is frequently minimized as archaic ritualism, it effects an important principle in a free society. If an individual is to be subjected to sovereign power, whether by the government or by a private person, the assertion of that power requires a tangible, overt and verifiable act directed toward the individual being called to account. It is for this reason that actual notice alone, unaccompanied by a valid jurisdiction-acquiring act, is legally insufficient to permit the court to exercise its power over the defendant. (See Wuchter v Pizzutti, 276 US 13, 24; McDonald v Ames Supply Co., 22 NY2d 111; Al-Dohan v Kouyoumjian, 114 Misc 2d 170, 93 AD2d 714.) Conversely, receipt of actual notice need not be proven. Constitutional due process standards require that process be served by a legally approved method that, viewed objectively, is reasonably calculated to make the defendant aware of the proceedings even if the summons is never actually received. (Dobkin v Chapman, 21 NY2d 490; see, also, Mullane v Central Hanover Trust Co., 339 US 306; US Const, 14th Arndt; NY Const, art I, § 6.)
The New York scheme for service of process on an individual, codified in CPLR 308, is well designed to satisfy both the notice and formality requirements, and thus conforms to constitutional standards. (Dobkin v Chapman, supra.) CPLR 308 provides a continuum of methods of service, which, in descending order, have a decreasing probability of according actual notice. Subdivision 1 provides for personal delivery to the individual defendant. Since personal delivery ordinarily affords actual notice, and is thus the most desirable form of service, no further acts are required. (CPLR 308, subd 1.) The four alternative *107 methods require additional acts which make actual notice more likely, or bear additional conditions which recognize that, while alternative forms of service may often be necessary to subject a defendant to the court’s jurisdiction, they are less desirable and more subject to abuse, thus requiring greater regulation. “Deliver and mail” substituted service therefore requires both service to a “person of suitable age and discretion” at the defendant’s actual place of business, dwelling, or usual place of abode, as well as mailing to his last known residence and filing of proof of service. (CPLR 308, subd 2.) Service on a designated agent requires the signing and filing, prior to service, of a written designation, effective for only three years. (CPLR 308, subd 3; 318.) “Nail and mail” service requires affixation of the summons to the door of the defendant’s place of business, dwelling or place of abode, plus mailing and filing, and proof that personal delivery or “deliver and mail” substituted service cannot be made by “due diligence.” (CPLR 308, subd 4.) Finally, court-ordered expedient service requires both prior application and proof that other methods are impracticable. (CPLR 308, subd 5.)
Good faith is implicit in the spirit of the statutory scheme. If a plaintiff knows, or should know, that service according to the letter of the statute will not afford notice, then, by definition, it is not reasonably calculated to afford notice, and is constitutionally infirm. (See, e.g., S.P.S.G., Inc. v Collado, 113 Misc 2d 167 [“attempts” to serve process, at time or locations where the plaintiff knows the defendant will not be found, held not “reasonable application” under RPAPL 735, or “due diligence” under CPLR 308, subd 4].) Of course, the law recognizes that there are some situations, as where “persons [are] missing or unknown, [in which] employment of an indirect and even a probably futile means of notification is all that the situation permits”. (Mullane v Central Hanover Trust Co., 339 US 306, 317, supra.) Indeed, upon a showing that service according to any of the prescribed methods is impracticable, a plaintiff may apply, ex parte, for a judicially fashioned alternative which, under the circumstances, is the most likely to afford notice. (CPLR 308, subd 5.) Such alternatives, including publication, may involve highly *108 unlikely means of affording notice, but are constitutional if reasonable and necessary under the circumstances and if judicially approved in advance. (See Dobkin v Chapman, supra.) No such showing was attempted here; there is no indication that service cannot otherwise be made in an acceptable manner.
“Deliver and mail” service is clearly the next best alter- . native to personal delivery. It requires actual physical delivery of the summons, to a responsible party who lives or works with the defendant. Coupled with mailing, it should provide a reasonable likelihood of giving actual notice, since the law correctly presumes that such responsible persons are likely to promptly pass the summons on to its intended recipient. The underlying purpose of giving notice might not be satisfied when the summons so served inadvertently goes astray. That, however, is not jurisdictionally fatal, since service was formally made in compliance with statute and in a manner calculated to give notice, thereby satisfying due process considerations. (See Nuez v Diaz, 101 Misc 2d 399.)
Where, however, service is not made in compliance with statute, e.g., where summons was mailed to defendant’s place of business rather than his last known residence (e.g., Glikman v Horowitz, 66 AD2d 814), the service is fatally defective; even if the defendant does receive notice, the requirement of a formal, jurisdiction-acquiring sovereign act is not met. Where “deliver and mail” substituted service is made pursuant to CPLR 308 (subd 2) on a person not of suitable, age and discretion, the formality requirement is not met and the purpose of giving notice may not be met.
A pragmatic rule can be synthesized from both these principles and the cases. The person to whom delivery is made must objectively be of sufficient maturity, understanding and responsibility under the circumstances so as to be reasonably likely to convey the summons to the defendant. Thus, delivery to adult relatives, employees, coworkers and apartment-house doormen as persons of suitable age and discretion, has been sustained. (See, e.g., Karlin v Avis, 326 F Supp 1325 [20-year-old college stu *109 dent]; Bossuk v Steinberg, 58 NY2d 916 [teen-age children]; Aspinall's Club v Aryeh, 86 AD2d 428 [spouse]; Oxhandler v Sekhar, 88 AD2d 817 [doctor’s receptionist-secretary]; Matter of Betzler v Carey, 109 Misc 2d 881, affd 91 AD2d 1116 [employee]; duPont, Glore Forgan & Co. v Chen, 41 NY2d 794, on remittitur 58 AD2d 789 [apartment-house doorman].) However, service on persons of limited or no understanding, or of remote or no relationship to the defendant, has not been sustained. (See, e.g., McDonald v Ames Supply Co., 22 NY2d 111, supra [building receptionist not employed by defendant]; Ilfin Co. v Benec lnds., 114 Misc 2d 411, supra [employee of corporate cotenant]; see, also, Joyce v Bauman, 11 NJ Rep Misc 237 [illiterate maid]; but cf. Nuez v Diaz, 101 Misc 2d 399, supra [ignorance of English language only one factor to be considered].)
Based on a superficial reading of the cases alone, one might assume, as the city did, that Milton Glass was an appropriate person to be served. A mature adult, he is married to and living with the defendant, with whom he jointly owns property; there is no indication that he is mentally incapacitated. (See Dime Sav. Bank u Norris, 78 AD2d 691.)
It is precisely the maintenance of the joint bank account, but for which Shirley Glass would not be a defendant, which creates the problem here. Sometimes, indicia of a close personal relationship (e.g., joint ownership of property) may well evidence a conflict of interest. (See Matter of Scriuani, 116 Misc 2d 204.) The city properly recognized that the joint tenancy in the account, which presumptively accords each party present and contingent future interests (see Banking Law, § 675; EPTL 6-2.2) mandated that Shirley be joined as a necessary party. (See CPLR 1001 et seq.; Bergdorf Goodman, Inc. v Marine Midland Bank, 97 Misc 2d 311.) Implicit in that recognition is the presumption that the parties may have adverse interests and that one cannot represent the other.[3] Here, Milton’s individual economic interest is clearly adverse to Shirley’s: It is to his advantage to have his debt satisfied from joint funds (i.e., *110 those in which he presumptively has only a half interest [see Bergdorf Goodman, Inc. v Marine Midland Bank, supra]) rather than from property owned only by him. Under such circumstances, the primary assumption of the statute, that the person to whom the summons is delivered will duly inform the defendant, is utterly inappropriate.
“Discretion” can have different meanings common to both lay and legal usage. (See Webster’s New Twentieth Century Unabridged Dictionary [2d ed], p 522; Black’s Law Dictionary [5th ed], p 419.) Among lawyers and laymen alike, it generally denotes either the power or ability to exercise independent judgment, or the capacity and maturity to act wisely and prudently. The statute obviously intends the second meaning, since an independent power to decide whether or not to deliver the summons would completely obviate the statute’s purpose. It cannot be disputed that prudence and good judgment not only vary from individual to individual, but from situation to situation. The law recognizes that self-interest may well alter anyone’s perception and conduct; ergo, it is the oldest ground for impeaching the credibility of a witness. The law assumes that no one is immune — not even those of whom it requires the highest standards of conduct — fiduciaries, lawyers and Judges. It accordingly imposes strict rules of disqualification from service in situations affected by a personal interest. It is no less appropriate that the law impose such a prophylactic rule here, where the constitutional rights of a party are at stake. It is of no moment here that the recipient of the summons is of suitable age, and ordinarily may be of suitable discretion; the question is whether he has suitable discretion in the specific circumstances presented here. Based only on the moving papers,[4] Milton Glass cannot be considered a person of suitable age and discretion; his inherent conflict of interest must be presumed to deprive him of the probity and mature concern that the law presupposes.
The process server’s act here was not a mere irregularity, remediable retroactively. Since plaintiff knew, or should have known, of Milton Glass’ prima facie conflict of interest, its delivery of the summons to him under these *111 circumstances neither carried the likelihood that his wife would receive notice, nor constituted a sovereign act directed to her. It would only beg the question to mechanically conclude that the court failed to acquire personal jurisdiction over defendant Shirley Glass simply because plaintiff failed to comply with the statute. Rather, the court’s power cannot be asserted over her, and the statute’s requirements cannot be discharged as to her, because the chosen method of serving her with process satisfied neither of the two essential purposes of serving process. Such service does not conform with basic due process standards. It cannot be constitutionally sustained.
The questions posed are answered in the negative. The proceeding is accordingly dismissed with leave to renew on new papers, upon proof of proper service.

. It cannot be ascertained, from the papers before the court, whether the process server served one or two copies of the moving papers on Milton Glass (i.e., one for him as an individual defendant and one for him as a person of suitable age and discretion). Of course, like most default submissions, these papers do not reveal that the subject of the substituted service received actual notice of the proceeding. Neither issue has been presented; neither is material to the court determination here. (See discussion infra.)

. It is also used in the substituted service provisions of the Real Property Actions and Proceedings Law, where it is also undefined, but apparently has the same meaning as in the CPLR. (See RPAPL 735; Ilfin Co. v Benec Inds., 114 Misc 2d 411.)

. While marriage has been poetically called a partnership, spouses are not legally partners, nor, even absent a conflict of interest, each other’s agents for service of process. (See Zarcone v Condie, 62 FRD 563.)

, See Rivera v Laporte, 120 Misc 2d 733, 735, n 3.