■ PHYLLIS PROCHILLO, Appellant, v GERALD ACKER, Respondent, et al., Defendants. (Action No. 1.) LINDA MARSHALL, Appellant, v GERALD ACKER, Respondent, et al., Defendants. (Action No. 2.) JOAN RAPPO, Appellant, v GERALD ACKER, Respondent, et al., Defendants. (Action No. 3.) — In medical malpractice actions, plaintiffs appeal from so much of three orders (one in each action) of the Supreme Court, Nassau County (Spatt, J.), all entered July 26, 1983, as granted the motions of defendant Gerald Acker for summary judgment dismissing plaintiffs' three complaints against him on the ground of lack of personal jurisdiction.

Orders affirmed, insofar as appealed from, with one bill of costs.

At a traverse hearing held to determine the question of personal jurisdiction, Sanford Fiveson, plaintiffs' process server, testified that on October 19, 1979, at approximately 9:30 A.M., he went to 10 Wren Drive, East Hills, Long Island, which he believed to be the address of Gerald Acker's (hereinafter defendant) residence. At this address a woman, who identified herself

as Gwen Hopper, the maid, answered the door. After a conversation with Hopper, Fiveson handed her summonses and complaints for all three plaintiffs. Fiveson testified that he subsequently completed affidavits of service and mailed a copy of each summons and complaint to 10 Wren Drive and also to another address on Park Place.

Defendant's former wife, Diane Acker, who, like her husband, was a physician, testified at the traverse hearing that defendant had moved from the marital home on December 31, 1977, at which time he had relinquished his house keys, and had not returned to reside there since that date. The parties were divorced in June 1979.

Diane Acker further testified that defendant had never maintained an office at 10 Wren Drive. However, in 1972, when defendant had organized a personal corporation (P.C.), she had been hired as a salaried office manager for the purpose of performing certain bookkeeping and financial services for the P.C. She had continued to perform these services subsequent to defendant's move from the marital residence in 1977 and, thereafter, through the present. This work was carried on by Diane Acker in her home at 10 Wren Drive, and some financial and corporate records were maintained at the house, although others were retained by the P.C.'s accountants and attorney. The P.C. also listed two telephone numbers at 10 Wren Drive in the 1979 and 1981 Nassau County telephone directories, but in 1979 there was also a separate listing for defendant at the place where he was residing at the time. Defendant maintained an office on Northern Boulevard in Roslyn where he conducted his medical practice during this period of time. The certificate of incorporation filed in 1972 reflected the corporation's business address only at 10 Wren Drive.

Diane Acker also testified that in October 1979, she hired Gwen Hopper as a domestic. Hopper's salary was paid by Diane Acker personally, and the entire employment period was less than two weeks. She did not believe that defendant had ever met Hopper. When she received the summonses and complaints delivered to Hopper on October 19, 1979, Diane Acker called defendant with respect to the documents, read their contents to him and, upon defendant's instructions, sent them to his insurance company.

It was defendant's testimony that in October 1979 his former wife performed services for the P.C., of which he was the sole officer and shareholder. She drew checks to pay for expenses and to handle the payroll, and she also acted as financial planner for the corporation. However, defendant denied that he ever conducted any part of his medical practice at 10 Wren Drive.

Defendant further testified that after leaving the marital home at the end of 1977, he resided in an apartment in Freeport for a period of 19 months; he had given the post office a forwarding address so that all future mail would be sent to that address; he also had a personal telephone number listed for that address. In addition, each year defendant completed certain hospital forms which indicated his current address, and a form prepared for the year 1978 reflected his residence at the Freeport apartment. Defendant moved from the Freeport location in August 1979 and resided at his future in-laws' home in North Woodmere for a period of four weeks. Thereafter, he took title to a home in Old Westbury in September 1979 and he occupied that house a day or two later with his new wife.

Based upon the testimony at the traverse hearing of the plaintiffs' process server, it was established that the housekeeper employed by defendant's former wife, who had accepted delivery of the summonses and complaints, was a person of "suitable age and discretion" and it was reasonable for the process server to believe that she was a person of "sufficient maturity, understanding and responsibility under the circumstances so as to be reasonably likely to convey the summons to the defendant" (*City of New York v Chemical Bank,* 122 Misc 2d 104, 108). However, the testimony failed to establish that 10 Wren Drive was either defendant's actual place of business, dwelling place or usual place of abode so as to satisfy the requirements of CPLR 308 (2). The weight of the credible evidence clearly established that defendant had not resided at that address since December 31, 1977. Although the P.C. had a corporate office at that address and financial business was conducted there by defendant's former wife, there was absolutely no proof that defendant performed any of his medical practice at that location. Further, there is no merit to plaintiffs' argument that service could properly be effectuated by serving the P.C. at its actual place of business, because the corporate entity was not named as a party defendant in any of the three actions (*see, Connell v Hayden,* 83 AD2d 30).

With respect to the mailing requirements of the statute, there is no question that the process server did not complete delivery of the summonses and complaints by mailing a copy of same to defendant's last known residence (CPLR 308 [2]). It is well established that mailing to a last known or even actual business address will not suffice; mailing must be to defendant's last known residence (*Glikman v Horowitz,* 66 AD2d 814; *Chalk v Catholic Med. Center,* 58 AD2d 822). The testimony of both defendant and his former wife established that defendant lived

in Freeport after leaving the marital residence in December 1977, that he resided at the new address for one year and seven months, that he listed a telephone number at that address and that he had informed the post office that he had so relocated. In August 1979, defendant's temporary residence was in North Woodmere, until he purchased and occupied a residence in Old Westbury in September 1979. This testimony was also supported by documentary evidence establishing the residences in question. At the time of the attempted service of the summonses and complaints in October 1979, therefore, defendant's last known residence should have been known or reasonably could have been ascertained by the plaintiffs as being other than 10 Wren Drive. This is particularly the case because the hearing court disbelieved those portions of the testimony of the process server which would have led to the conclusion that 10 Wren Drive was defendant's last known residence.

We have considered the remaining contentions of the plaintiffs and find them to be without merit. Mollen, P. J., Titone, Thompson and Bracken, JJ., concur.