**Stephanie GOETZ and Kevin McGill, Individually and on Behalf of All Others Similarly Situated, Plaintiffs,**

v.

**SYNTHESYS TECHNOLOGIES, INC., Michael J. Fleischhauer, Harry Gittes, Walter Loewenbaum, James Kever, Marvin Greshman, Personal Administrators and Patti O'Meara, Defendants.**

No. A–02–CA–081–H.

United States District Court, W.D. Texas.

July 30, 2004.

Brady Sherrod Edwards, David George, Edwards & George, L.L.P., Houston, TX,

J. Derek Braziel, Edwards & George LLP, Dallas, TX, for Plaintiffs.

Gary L. Bledsoe, Law Office of Gary L. Bledsoe, Austin, TX, John H. Bucy, II, Austin, TX, Sheryl Gray Rasmus, The Rasmus Firm, Austin, TX, Scott A. Agthe, Amy Stoeckl Ybarra, Brown & McCarroll, L.L.P., Gary L. Lewis, George, Donaldson & Ford, David H. Donaldson, Jr., Graves Dougherty Hearon & Moody, Austin, TX, for Defendants.

## ORDER

HUDSPETH, Senior District Judge.

On this day came on to be considered Defendant Enrique F. "Harry" Gittes' motion for relief from default judgment and motion for stay of enforcement of default judgment in the above-styled and numbered cause. Plaintiffs, all former employees of Synthesis Technologies, Inc. ("STI"), brought an action to recover unpaid wages and overtime compensation pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201, et seq., with pendent claims asserted under Texas law. The underlying basis for this suit was Plaintiffs' contention that they were unlawfully denied compensation which they were entitled to receive by STI and by individual Defendants Michael Fleischhauer ("Fleischhauer"), Gittes, and Walter Loewenbaum, all former officers and/or directors of the corporation. On June 30, 2003, Judge James R. Nowlin entered a no-answer default judgment against Gittes, Fleischhauer, and STI. More than a year later, on July 2, 2004, Defendant Gittes filed the instant motion, asking the Court to vacate that judgment pursuant to Federal Rule of Civil Procedure 60(b)(4).

■ Under most circumstances, Rule 60(b) motions are evaluated using a set of eight criteria. *See Magness v. Russian Federation*, 247 F.3d 609, 618–19 (5th Cir. 2001). However, Rule 60(b)(4) motions are a breed apart. Questions of timeliness, meritorious defenses and unfair prejudice are irrelevant in such instances. *See Carter v. Fenner*, 136 F.3d 1000, 1005–06 (5th Cir.1998). "Unlike motions pursuant to other subsections of Rule 60(b), Rule 60(b)(4) motions leave no margin for consideration of the district court's discretion as the judgments themselves are by definition either legal nullities or not." *Id.* at 1005. There is no gray in this inquiry. There is but one question to answer: was the judgment void?

■ Courts within the Fifth Circuit consider two factors in determining the voidness of a judgment. "A judgment 'is void only if the court that rendered it [1] lacked jurisdiction of the subject matter, or of the parties, or [2] if it acted in a manner inconsistent with due process of law.'" *Williams v. New Orleans Pub. Serv., Inc.*, 728 F.2d 730, 735 (5th Cir.1984) (quoting 11 WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE § 2862 (1973 ed.)). Here, Defendant Gittes contends that, because he was never properly served, Judge James R. Nowlin's court lacked personal jurisdiction, and the default judgment entered against him should be declared void. In taking this course of action, Defendant Gittes is well within his rights. Indeed, "[t]he principle that a party may silently suffer a default judgment and later challenge personal jurisdiction is a 'foundational principle of federal jurisdiction law.'" *Jackson v. FIE Corp.*, 302 F.3d 515, 522–23 (5th Cir.2002) (quoting *Harper Macleod Solicitors v. Keaty & Keaty*, 260 F.3d 389, 397 & n. 9). If the Court determines that Defendant Gittes was never properly served, it has no choice but to declare the default judgment entered against him void. See *id.* at 522. See also *Polygram Merch., Inc. v. N.Y. Wholesale Co.*, No. 97 CIV 6489(HB), 2000

WL 23287, *1 (S.D.N.Y. Jan.13, 2000) ("Proper service provides the hallmark of due process and therefore a judgment obtained by defective service is void and must be vacated.").

■ Plaintiffs assert that Defendant Gittes was served with process in compliance with Federal Rule of Civil Procedure 4(e)(1), which allows for service "pursuant to the law of the state . . . in which service is effected." FED. R. CIV. P. 4(e)(1). Specifically, Plaintiffs claim that, upon learning that Defendant Gittes maintained a residence in New York City, New York, they served him legally under the laws of that state, namely, section 308(4) of the New York Civil Practice Law and Rules ("CPLR")[1], the so-called "nail and mail" rule.

Defendant Gittes, in turn, while not disputing that he owns the referred-to residence in New York City, New York, argues that this service was improper because: (1) it did not comply with the order granting Plaintiffs' motion for substitute service, Def. Gittes' Mots. for Relief from J. & Stay of Enforcement Ex. 2; and (2) even if service under the "nail and mail" rule had been proper, Plaintiffs failed to comply with the rule's requirements that the plaintiff (a) exercise "due diligence" before resorting to service under the "nail and mail" rule and (b) affix the summons to the door of Defendant Gittes' "usual place of abode." See Mot. for Relief from Default J. Against Def. Gittes at 7–12. In essence, Defendant Gittes does not so much challenge the veracity of Plaintiffs' factual claims regarding service; rather, he labels Plaintiffs' attempts at service legally inadequate.

### Failure to Comply with Court Order

■ First, the Court will examine Defendant Gittes' assertion that Plaintiffs' attempts at service were improper because they failed to comply with a March 13, 2003 court order authorizing substituted service. That order provided Plaintiffs with two additional methods of service: (1) personal service by mail pursuant to section 312–a of the NYCPLR; and (2) service by "leaving copies of the summons and complaint at Gittes' dwelling house or usual place of abode, with some person of suitable age." Order Granting Pls.' Mot. for Substitute Service, Def. Gittes' Mots. for Relief from J. & Stay of Enforcement Ex. 2. As noted above, Plaintiffs concede that they did not serve Defendant Gittes in either of these court-authorized ways.

That said, Defendant Gittes does not provide any support for his position that a plaintiff is limited to court-authorized methods of substitute service, when given, and such a position runs contrary to both the wording of the March 13, 2003 order and the rationale under which such motions are granted. To wit, the order itself did not "order" Plaintiffs to serve process on Defendant Gittes via the two methods it listed; it merely "authorized" them to do so. Order Granting Pls.' Mot. for Substitute Service ("IT IS ORDERED, that the Plaintiffs are *authorized* to serve Enrique F. 'Harry' Gittes at his residence located at 4 E. 82nd Street, New York, N.Y. 10028, as follows: . . . .") (emphasis added).

This meaningful distinction between authorizing and ordering reflects the purpose of substituted service under section 308(5) of the CPLR, which is to provide a plaintiff

---

1. " 'Nail and mail' service requires affixation of the summons to the door of the defendant's place of business, dwelling or place of abode, plus mailing and filing, and proof that personal delivery or 'deliver and mail' substituted service cannot be made by 'due diligence.' " *City of N.Y. v. Chem. Bank*, 122 Misc.2d 104, 470 N.Y.S.2d 280, 284 (N.Y.Sup.Ct.1983).

with alternatives to the prescribed methods of service when said methods are impracticable. See *Chem. Bank*, 470 N.Y.S.2d at 284. Section 308 "provides a continuum of methods of service, which, in descending order, have a decreasing probability of according actual notice." *Id.* In essence, substituted service is the method of last resort, the fifth of five options. Thus, it would be anomalous to bar a plaintiff from effecting service with a prescribed method, such as section 308(4) of the CPLR, which is more likely to accord actual notice.

### *"Due Diligence"*

■ The "nail and mail" rule states that it can be used as a method of service only "where service under paragraphs one [personal service] and two ['deliver and mail' service] cannot be made with due diligence." N.Y. C.P.L.R. § 308(4). Defendant Gittes argues that Plaintiffs failed to exercise due diligence prior to serving him via the "nail and mail" method, and that, as a result, service was improper. "There is no rigid standard by which the due diligence requirement is measured, and whether a party has satisfied that requirement will necessarily depend upon the facts of each case." *Hanover New England v. MacDougall*, 202 A.D.2d 724, 608 N.Y.S.2d 561, 561–62 (N.Y.App.Div.1994).

■ Plaintiffs' efforts to serve Defendant Gittes consisted of the following acts. First, process server Brian Nolan ("Nolan"), upon being informed that Gittes possessed a residence at 4 East 82nd Street, New York, New York ("82nd St. residence"), made two attempts—at 4:35 p.m. and 8:30 p.m., respectively—to serve Gittes at that residence on January 16, 2003. Aff. of Brian Nolan, Def. Gittes' Mots. for Relief from J. & Stay of Enforcement Ex. 1. Both attempts were unsuccessful. Nolan also attempted to personally serve Defendant Gittes at an alleged address of STI that Gittes had recently sent correspondence from, 445 Park Avenue, New York, New York, also to no avail. *Id.* Next, on January 23, 2003, Nolan attempted to serve Gittes via United States Certified Mail at the 82nd St. residence. This method of service was unsuccessful, too, as the item was returned unclaimed on February 15, 2003. Track & Confirm, Def. Gittes' Mots. for Relief from J. & Stay of Enforcement, Ex. 1.

Plaintiffs describe their subsequent efforts to serve Defendant Gittes in the following manner:

Plaintiffs filed their Third Amended Collective Action Complaint on March 8, 2003. A summons for Gittes was issued on March 17, 2003. Randy Barona attempted to serve Gittes with this summons and complaint at 4 East 82nd St., New York[,] New York 10028–0341 on March 21, 2003 (at 12:20 p.m.), March 24, 2003 (at 9:50 p.m.), March 28, 2003 (at 8:45 p.m.), and April 3, 2003 (at 9:30 a.m.), but no one answered the doorbell.

Michael Keating attempted to serve Gittes ... at 4 East 82nd Street, New York 10028–034[sic] on April 7, 2003 (at 12:47 p.m.). When no one answered the doorbell, Keating served a true copy of the summons and Plaintiffs' Third Amended Collective Action Complaint upon Gittes by personally affixing these papers in a conspicuous place on the front door at 4 East 82nd Street [residence]. On April 7, 2003, Mr. Keating served another copy of the summons and Plaintiffs' Third Amended Collective Action Complaint on Gittes in accordance with the procedures set forth in New York Civil Practice Law and Rules ("CPLR") § 308(4).... Service on Gittes was therefore completed on April 7, 2003.

Pls.' Resp. to Def. Enrique Gittes' Mot. for Relief from Default J. at 2–3 (internal citations omitted).

"[T]he predominant view [regarding a due diligence inquiry] appears to follow a course that examines the totality of all the circumstances that bear on whether the service of process at issue was reasonably calculated to give the defendant notice." *Sartor v. Utica Taxi Ctr., Inc.,* 260 F.Supp.2d 670, 676 (S.D.N.Y.2003). While no checklist exists, several considerations have emerged as particularly pertinent in making a due diligence analysis:

> whether the process server (1) attempted service during various days and times—before and after working hours, weekdays and weekends or holidays—when defendant may be reasonably expected to be found at home; (2) had an opportunity to serve a person of suitable age and discretion pursuant to CPLR 308(2) and failed to do so; (3) made adequate inquiry, upon receiving no response to reasonable efforts to gain access to defendant's residence, as to defendant's whereabouts, habits or schedule of times at home, or place of business; (4) made an effort to serve at defendant's workplace where the location of employment was readily apparent.

*Id.* at 676–77 (internal citations omitted).

Plaintiffs' efforts clearly satisfy the first and fourth of these factors, dealing with the temporal variance of the service attempts and whether an attempt was made to serve Defendant Gittes at his workplace. In total, Plaintiffs attempted personal service upon Gittes, pursuant to CPRL § 308(1), on eight separate occasions—seven times at Gittes' 82nd St. residence, and once at an alleged business address on Park Avenue. These seven

service attempts at the 82nd St. residence occurred on six separate dates, and three of the attempts were made outside of regular business hours. Additionally, Plaintiffs attempted to serve Gittes via certified mail at the 82nd St. residence, pursuant to CPRL § 308(2). Only after all this effort—a total of nine separate attempts—did Plaintiffs decide to resort to "nail and mail" service.

■ The other two factors of the due diligence inquiry present murkier waters. It is unclear whether Plaintiffs' process servers had an opportunity to serve a "a person of suitable age and discretion" but failed to do so. Defendant Gittes presents a contradictory argument on this issue, at once stating that Plaintiffs failed to serve his front desk clerk at the 82nd St. residence, and that no such person exists. Mot. for Relief from Default J. Against Def. Gittes at 8. In any case, while doormen and front desk clerks can be deemed persons of suitable age and discretion, the record must not reveal evidence "that the duties of the particular doorman in question varied from the usual duties of such an individual." *Charnin v. Cogan,* 250 A.D.2d 513, 673 N.Y.S.2d 134, 137 (N.Y.App.Div.1998) (citing *F.I. duPont, Glore Forgan & Co. v. Chen,* 41 N.Y.2d 794, 795, 797, 396 N.Y.S.2d 343, 364 N.E.2d 1115 (N.Y.App.Div.1977)). Here, the record reveals evidence that such a person did not even exist. Aff. of Gittes, Mot. for Relief from Default J. Against Def. Gittes Ex. 3. Accordingly, it would be speculative to accord much weight to this particular argument of Gittes.

In a similar vein, it is unclear what efforts, if any, were made by Plaintiffs' process servers to inquire with any neighbors regarding Defendant Gittes' whereabouts.[2] Nolan clearly spoke with some-

**2.** Defendant Gittes' suggestion that Plaintiff should have served him at his residence in

one at the 82nd St. residence, although it is unclear exactly who he talked to, or what was said. Aff. of Nolan. In any case, after examining the efforts of other courts to interpret the due diligence requirement, this Court is satisfied that Plaintiffs' numerous, varied attempts to serve Defendant Gittes were sufficient. *See, e.g., Wroblewski v. Morrissette*, No. 96–CV–0182E(F), 2000 WL 129184, *2 (W.D.N.Y. Jan.27, 2000) (holding that three attempts on three different dates, including one after business hours, constituted a "wide range of hours," and was sufficient to fulfill due diligence requirement); *Hanover*, 608 N.Y.S.2d at 562 (finding three attempts at service, including two outside of business hours, in conjunction with an effort to ascertain defendant's whereabouts by speaking to a neighbor, constituted due diligence).

### *"Usual Place of Abode"*

Lastly, Defendant Gittes argues that, even if the Plaintiffs exercised due diligence, they did not comply with the "nail and mail" rule because the summons was not affixed to his "usual place of abode." As noted above, a plaintiff can effect service under CPRL § 308(4) by "affixing the summons to the door of either the actual place of business, dwelling place or usual place of abode within the state of the person to be served" and by complying with the mailing requirements of CPRL § 308(2).

Defendant Gittes, who identifies himself as a citizen, but non-resident, of the United States, contends that, though he does not deny ownership of an apartment at 4 E. 82nd St., New York, New York, that apartment does not qualify as a "usual place of abode." See Aff. of Gittes at 2 ("Aff. of Gittes"), Def. Gittes' Mots. for Relief from J. & Stay of Enforcement Ex. 3. Specifically, Defendant Gittes rests his argument on averments that he: (1) did not live, and has not lived, at the 82nd St. residence, and only visits it sporadically; (2) is not a New York resident; (3) resided in Italy and Spain during the period Plaintiffs attempted to serve him; and (4) does not regularly receive mail at the apartment. See Mot. for Relief from Default J. Against Gittes at 11–12.

A person can have multiple "usual places of abode," provided each one contains sufficient indicia of permanence. *Polygram Merch.*, 2000 WL 23287, at *2 (citation omitted). Therefore, the fact that Defendant Gittes possessed other residences, outside and inside New York state[3], is not dispositive. The Southern District of New York has repeatedly held that "the 'permanence' a person enjoys at one residence is not lessened by the fact that he or she enjoys permanence elsewhere." *Id.* (citing *131 Main St. Assocs. v. Manko*, 897 F.Supp. 1507, 1524 (S.D.N.Y.1995)). *See also Jaffe & Asher v. Van Brunt*, 158 F.R.D. 278, 279 (S.D.N.Y. 1994).

Similarly, Defendant Gittes' contention that he was not living in the 82nd St. residence during the period when service was attempted does not render Plaintiffs' service improper. The case Defendant Gittes cites to support this position, *Fulton Savings Bank v. Rebeor*, 175 A.D.2d 580, 572 N.Y.S.2d 245, 245 (N.Y.App.Div.1991),

---

South Hampton, New York upon learning of it from Michael Fleischhauer's deposition is unavailing, as Fleischhauer was unable to provide a specific address. See Dep. of Michael Fleischhauer at 124:20, Def. Gittes' Mots. for Relief from J. & Stay of Enforcement Ex. 6.

**3.** Defendant states that he frequently stays at his property located at 354 S. Main Street, South Hampton, New York 11968 when in the state. Aff. of Gittes, Mot. for Relief from Default J. Against Def. Gittes Ex. 3.

does not go as far as Defendant Gittes would like to believe. That is, it simply stands for the proposition that a defendant-owned apartment that is **leased at the time of service** does not qualify as a "actual dwelling place." Yet Defendant Gittes does not claim that the 82nd St. residence was leased at the time of service, and thus his citation to Fulton is unpersuasive. Moreover, closer examination of the applicable case law yields several instances in which courts have held that a defendant's absence from a residence at the time of service does not preclude "usual place of abode" status. *See Litton Loan Servicing, L.P. v. Vasilatos*, 7 A.D.3d 580, 777 N.Y.S.2d 165, 167 (N.Y.App.Div.2004) (holding that service to defendant's Greenport, New York residence was effective even though the defendant was residing in Greece at the time of service); *Jaffe & Asher*, 158 F.R.D. at 279 (deeming residence a "usual place of abode" despite the fact that defendant no longer lived there); *Polygram Merchandising*, 2000 WL 23287, at *2–*3.

█ Neither Defendant Gittes' residency abroad nor the sporadic nature of his usage of the New York City residence preclude this Court from declaring his 82nd St. residence a "usual place of abode within the state." *See Krechmer v. Boulakh*, 277 A.D.2d 288, 715 N.Y.S.2d 253, 254 (N.Y.App.Div.2000) (finding that a Moscow resident's New York vacation house, though only visited by defendant sporadically, could be considered a "usual place of abode."). In *Krechmer*, the Court's determination was largely shaped by the words "within the state," which modify the term "usual place of abode" in CPRL § 308(4); to wit, the vacation home, while not his primarily dwelling, was his usual place of abode while **within the state.** *Id.* The same can be said of Defendant Gittes' apartment at 4 E. 82nd Street.

Even though Gittes might split his time in New York between that residence and his property located in South Hampton, New York, a defendant is not limited to one "usual place of abode," and sufficient evidence of permenance related to the 82nd St. residence exists to characterize it as Gittes' "usual place of abode." From Gittes' affidavit, one can safely conclude that: (1) he owns the at-issue apartment; (2) nobody else resides there; (3) his usage of it is, at the least, bi-yearly; (4) he visited the apartment during the period of Plaintiffs' attempted service; and (5) he used the apartment address as his mailing address on occasion. Aff. of Gittes at 1–3. As such, this Court is satisfied that Defendant Gittes' apartment, located at 4 E. 82nd St., New York, New York, can properly be considered his "usual place of abode" for the purposes of CPRL § 308(4), and that, therefore, Defendant Gittes was properly served on April 7, 2003.

It is therefore ORDERED that Defendant Gittes' motion for relief from default judgment be, and it is hereby, DENIED.

It is further ORDERED that Defendant Gittes' motion to stay enforcement of default judgment be, and it is hereby, DENIED.